UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-20454-CIV-GOLD/McALILEY

MULIA, INC.,

       Plaintiff,

vs.

SEABOARD WAREHOUSE
TERMINALS, INC.,

       Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS; STRIKING ORDER TO SHOW CAUSE; CANCELLING ORAL ARGUMENT

THIS CAUSE is before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 9]. The parties have filed a Response [DE 12] and Reply [DE 19]. I have reviewed the motion and related pleadings, as well as the applicable case law, and have determined that oral argument is not necessary and that the Motion must be denied.

I.    Factual Background

The relevant facts, as alleged in the Verified Complaint [DE 1], taken as true in deciding a motion to dismiss, are as follows:

Plaintiff Mulia, Inc. ("Plaintiff" or "Mulia"), is a California corporation with its principal place of business of distributing glass block and various forms of tile. (V. Compl., ¶ 1). Defendant Seabord Warehouse Terminals, Inc. ("Defendant" or "Seabord"), is a Florida corporation with its principal place of business located in Miami, Florida. (*Id.* at ¶ 2).

1

On or about January 16, 2004, Mulia and Defendant executed a Contract and Rate Quotation (the "Contract"), whereby Defendant agreed, among other things, to store certain of Mulia's products at its warehouse facilities, including the warehouse located at 3455 N.W. 54th Street, Miami, Florida. (*Id.* at ¶ 5). Pursuant to the Contract, Defendant agreed to (a) store various products that would be deposited by or on behalf of Mulia; and, (b) release those products directly to Mulia's customers upon receipt of written instructions from Mulia.   (*Id.* at ¶ 6).  Defendant agreed to provide Mulia with monthly inventory reports, identifying the type and quantity of Mulia's products held at the warehouse. (*Id.* at ¶ 7). In exchange, Mulia agreed to tender monthly payments upon receipt of invoices for the services. (*Id.* at ¶ 8). The parties executed a second Contract and Rate Quotation ("Second Contract") on or about April 15, 2006. (*Id.* at ¶ 10).

According to Mulia, in or about December 2007, Mulia learned that Defendant had issued three separate invoices for identical services allegedly performed in February 2007; invoices numbers 0247698, 023689, and 0238024, totaling $ 30,961.08. (*Id.* at ¶ 12). Mulia alleges that it never received invoice no. 02380124, and that despite the fact that payment in full was tendered for invoice no. 023689, Seabord failed to cancel invoice no. 0247698. (*Id.* at ¶ 13).  In addition, Seabord was seeking payment for various unsubstantiated finance charges dating back to 2004, totaling approximately $10,185.00. (*Id.* at ¶ 14). Mulia alleges that these finance charges were not supported by the Contract or Second Contract.  (*Id.* at ¶ 15).

Mulia further alleges that there were discrepancies in several of the monthly inventory reports that had been submitted by the Defendant. (*Id.* at ¶ 17).  As a result,

Mulia's customers were effectively precluded from retrieving products from the Warehouse. (*Id.*). Following an episode in which one of Mulia's customers left the warehouse empty-handed because Seabord could not locate the products the monthly inventory indicated were present at the warehouse, Mulia requested that Defendant perform an actual physical count of the goods stored at the warehouse. (*Id.* at ¶¶ 17-18). Although Seabord promised to perform the requested physical count, Seabord never did so. (*Id.*). Seabord then informed Mulia that it would not release any of Mulia's goods until the payment issues were resolved. (*Id.* at ¶ 19).

On or about December 14, 2007, Mulia's counsel sent Defendant correspondence demanding that Defendant (1) provide a complete accounting of the amounts claimed owed by Mulia under the agreements; and, (2) conduct the promised physical count of Mulia's products stored at the warehouse, and provide a report outlining the same. (*Id.* at ¶ 20). Mulia informed Defendant that upon receipt of such information, Mulia would immediately tender all amounts, if any, that were legitimately owed under the agreements. (*Id.* at ¶ 21). Defendant failed and refused to comply with Mulia's demands. (*Id.* at ¶ 22).

Besides refusing to provide any documentation to substantiate the amounts it claimed to be due, Defendant informed Mulia that it would not release any of the products then held at the warehouse, having a value of approximately $800,000.00, unless and until Mulia tendered a payment in the amount of $43,000.00 consisting of, among other things, the finance charges and the three improper invoices. (*Id.* at ¶¶ 23-24). Mulia performed its own accounting, concluded that the balance actually due to Defendant was $6,297.32, and tendered payment in that amount. (*Id.* at ¶¶ 29-31).

3

Based on these allegations, Mulia filed a Verified Complaint against Seaboard pleading the following causes of action: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Replevin; (4) Conversion; and, (5) Accounting. Mulia invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, and asserted that there was complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.00. (*Id.* at ¶ 3).

On February 22, 2008, Mulia filed a Motion for the Entry of an Order to Show Cause pursuant to Fed. R. Civ. P. 64 and *Florida Statutes* §§ 78.065 and 78.067 directing Seaboard to show cause as to why the property at issue in this action should not immediately be taken from the possession of the Defendant and delivered to Mulia. A Show Cause Hearing was scheduled for April 4, 2008 and, per the parties' joint request, rescheduled to April 25, 2008. On March 24, 2008, Defendant filed the instant Motion to Dismiss [DE 9]. I informed the parties that the subject motion would be heard on April 25, 2008, in conjunction with the Order to Show Cause.

In response to the Order to Show Cause, Seabord informed the Court that the Order to Show Cause had been resolved amicably between the parties; that Seabord had agreed to release Mulia's goods unconditionally; and that no further judicial intervention was necessary as to the issue of release of the goods. My chambers contacted counsel for the parties to inquiry as to the status of the remaining issues and the motion to dismiss. Counsel agreed that other issues still required judicial intervention, and that the motion to dismiss was not moot.

4

II.   Standard of Review

In determining whether to grant a motion to dismiss, the court must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir. 2001).

Although a plaintiff need not state in detail the facts upon which he bases his claim, Fed. R. Civ. P. 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007). In other words, a plaintiff's pleading obligation requires "more than labels and conclusions." *Id.* at 1964-65; *see also Pafumi v. Davidson*, No. 05-61679-CIV, 2007 WL 1729969, at *2 (S.D. Fla. June 14, 2007). The previous standard that there be "no set of facts" before a motion to dismiss is granted has thus been abrogated in favor of the requirement that a pleading must be "plausible on its face." *Bell Atl.*, 127 S. Ct. at 1968, 1974 (discussing *Conley v. Gibson*, 355 U.S. 41 (1957)); *see also, Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) ("While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level.") (citing *Bell Atl.*, 127 S. Ct. at 1965)(internal quotations omitted)). In order to survive a motion to dismiss, the Plaintiff must have "nudged [her] claims across the line from conceivable to plausible." *Bell Atl.*, 127 S. Ct. at 1974. As discussed more fully below, applying these principles to the facts of this case, I deny Seabord's Motion to Dismiss the Verified Complaint for lack of subject matter jurisdiction.

5

III. Analysis

In its Motion to Dismiss, Defendant argues that the Court lacks subject matter jurisdiction because Plaintiff has failed to meet the required $75,000.00 jurisdictional amount in controversy. Specifically, Defendant argues that, at best, this is a claim for damages in the amount of $43,000.00, which is the amount Plaintiff alleges Seabord is improperly seeking to collect. Defendant further argues that the Court should not consider the $800,000.00 warehousemen lien, and the count for replevin of the goods, because "[t]here is no circumventing the fact that the dispute made out in the Complaint is for an amount no greater than $43,000," and that this point is underscored by Seabord's initial offer to release the goods upon a posting of a bond in the amount of $43,000.00. In its Reply, Defendant adds that in a claim for replevin, which concerns a dispute as to the *possession* of the property rather its title, the value of the property is not determinative of the amount of the claim. Defendant does not deny that at the time the Verified Complaint was filed, Defendant was holding Mulia's property which was valued at approximately $800,000.00, and that the Verified Complaint sets forth claims for both replevin and *conversion* of such property.

Section 1332(a), Title 28 of the United States Code, grants district courts subject matter jurisdiction of all civil actions "where the matter in controversy exceeds the sum of $75,000 ... and is between citizens of different states." 28 U.S.C. § 1332(a). "A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288

6

(1938)). Where a plaintiff files suit in federal court against a diverse party for damages exceeding $75,000.00, the cause shall not be dismissed "unless it appears to a *legal certainty* that plaintiff's claim is actually for less than the jurisdictional amount." *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1094 (11th Cir. 1994) (citing *St. Paul's Indemnity Corp. v. Red Cab Co.*, 303 U.S. 283, 288-289 (1938)) (emphasis added); *Riley v. Fairbanks Capital Corp.*, 222 Fed. Appx. 897, 899, n. 3 (11th Cir. 2007). However, the "legal certainty" test does not apply to cases where jurisdiction is based on a claim for indeterminate damages; instead, the party seeking to invoke the court's diversity jurisdiction must prove, by a preponderance of the evidence, that the claim on which federal jurisdicition is based meets the jurisdictional amount. *Federated Mut. Ins. Co.,* 329 F.3d at 807 (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated on other grounds by* Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072-77 (11th Cir. 2000)).

In determining the amount in controversy, the Court looks to the amount stated on the face of the complaint. *See Dassinger v. S. Cent. Bell Tel. Co.*, 505 F.2d 672 (5th Cir. 1974).[1] The "existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Ferry v. Bekum Am. Corp.,* 185 F. Supp. 2d 1285, 1287-1288 (M.D. Fla. 2002) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)). Thus, the amount in controversy must be assessed as of the date that the action is commenced, and without regard to any subsequent events which may

[1]

In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

7

bring the amount in controversy below the jurisdictional threshold. *See, e.g., Poore v. American-Amicable Life Ins. Co.,* 218 F.3d 1287, 1291 (11th Cir. 2000) (stating that in removal cases, the amount of controversy is determined as of the date of removal), *overruled on other grounds by* Alvarez v. Uniroyal Tire Co., 508 F.3d 639 (11th Cir. Fla. 2007); *Marraccini v. Clarendon Nat'l Ins. Co.,* No. 02-20896, 2003 WL 22668842, at *2 (S.D. Fla. Oct. 1, 2003) ("Contrary to Defendant's contentions, federal courts have diversity jurisdiction over an action where the claims satisfy the amount in controversy requirement *at the time that the complaint was filed.*") (emphasis added).

In this case, although plaintiff has several claims for indeterminate damages, such as its breach of contract claim, Plaintiff has also plead a claim for conversion of property valued at $800,000.00. "The essential elements of a conversion is a wrongful deprivation of property to the owner." *Wilson Cypress Co. v. Logan,* 120 Fla. 124, 127-128 (Fla. 1935). In a conversion case, the plaintiff is entitled to recover the full value of the personal property converted by the defendants. *Id.* Therefore, the "legal certainty" test applies and, since Plaintiff has met its initial burden by alleging that the amount of controversy exceeds $75,000.00, dismissal is only proper if Defendant shows, *to a legal certainty*, that despite's Mulia's allegations, its claims are actually for less than the jurisdictional amount. *See Burns,* 31 F.3d at 1094. Defendant has not done so.

In its Verified Complaint, Plaintiff alleges that the approximate value of its property, for which Mulia has brought claims for Replevin and *Conversion*, is $800,000.00, well above the jurisdictional requirement. Defendant does not deny the value of the property. Although the parties have advised the Court that Seabord has

8

agreed to release Plaintiff's property, possible mooting these counts, the jurisdiction of the Court is determined at the time the Complaint was filed and is not lost by subsequent events.  Therefore, Defendant's motion to dismiss must be denied.

IV.    Conclusion

For the reasons discussed above, it is hereby ORDERED AND ADJUDGED:

1.    The Order to Show [DE 4] is STRICKEN.

2.    Defendant's Motion to Dismiss [DE 9] is DENIED.

3.    Oral argument on these matters, previously scheduled for April 25, 2008 at 11:00 a.m., is CANCELLED.

DONE AND ORDERED in Chambers at Miami, Florida, on this ꝗꝗ day of April, 2008.

ALAN S. GOLD
U.S. DISTRICT JUDGE

cc:
U.S. Magistrate Judge Chris McAliley
Counsel of Record

9